Mr. Shaffer, may it please the court. My name is Brian Shaffer. I'm appearing here per bono on behalf of the petitioner. Your Honor, this is an immigration case, or more specifically, a citizenship case. And in this case, we're tasked with figuring out what out-of-wedlock means. There are two pieces of evidence that really matter in this case. First, we have the petitioner's birth certificate, which lists his mother, but no father. Secondly, the government presented a marriage certificate showing the petitioner's mother was married before he was born. The petitioner did not object to the authenticity or admissibility of the marriage certificate, but did question its factual accuracy. Regardless, it doesn't matter. It does establish the mother was legally married. What we need to look at to evaluate the legal relationships is going to be the law in Nuevo Leon, Mexico. Again, as I said, we're trying to figure out what out-of-wedlock means. The reason that matters is there are two separate statutes talking about derivative citizenship. And this is citizenship acquired by birth, and it's acquired by operation of law. The two statutes are 8 U.S.C. 1409, specifically C, and 8 U.S.C. 1401, A, specifically what was A9 and is now A7. Both these statutes confer citizenship to children that are born to U.S. citizen parents or mothers. 1401 requires 10-year physical presence for the mother before the child is born. 1409 requires one year. And that's why the out-of-wedlock is going to matter. The term in 1409 is out-of-wedlock. It says 1401 outlines the law, and 1409 creates an exception for children born out-of-wedlock. As I said earlier, there's no father listed on the birth certificate, so legally the petitioner has no father. It does not matter what the petitioner believes, what the government believes. Legally he has no father. A father whose relationship has not been established by law is legally only a putative father, and that's what our contention is. As we said earlier, the family presented evidence saying that they weren't married, but we argue that that doesn't matter. Because he had no father, it's impossible to say his mother was ever married to his father. In other words, out-of-wedlock means the parents were married. If he has no father, his parents can't be married. It's the legal concept. The court recently said the legitimacy is a legal concept. The law of a child makes a child legitimate or illegitimate. Again, he legally has no father. But that particular section, 1409C, doesn't speak in terms of legitimacy. It does not speak in terms of legitimacy, but it's part... There are other provisions that do. There are, Your Honor, and what I would say is there are two things to point to there. 1409A speaks to legitimacy. So, again, inside that section, which all of the section talks about out-of-wedlock births, legitimacy seems to matter. The other thing that's important is in 8 U.S.C. 1101, there are definitions of a child and a parent. The definitions for child and parent that apply to Title III, which is the citizenship part, specifically make reference to legitimation. It does not allow a child of a step-parent to become a citizen. The focus there is on legitimation. Your position is that, henceforth, every one of these 1409C cases requires legitimacy, proof of legitimacy? Our argument is if it requires it for the father, if the father has to prove legitimacy, the mother... You can't require the father to prove legitimacy there and then require the mother to presume legitimacy, so to speak. It has to work both ways. This issue really... It's an issue of semantics or semantic change. Out-of-wedlock is a term that... It's a politically correct way of saying illegitimate. That's why it was created. Before that... Not necessarily. Well, not necessarily, but if you look at why it changed inside the Immigration and Nationality Act, the term out-of-wedlock really was always associated with illegitimacy. It changed from illegitimate to out-of-wedlock. For instance... Well, out-of-wedlock, if you're wed, there's a presumption, a rebuttable presumption that the child is the product of the marriage. Whereas if the mother is single, there's... Right. The child is unquestionably born out-of-wedlock and is illegitimate. Yes, and we agree that there's a presumption. The issue in this case is how does that presumption really work? In this case, the presumption for out-of-wedlock creates a presumption of legitimacy or a presumption of the father. What we did in this case is look at the law in Mexico to figure out whether this presumption exists. In Mexico, the law that applied to him when he was born, there's an article, Article 324, that says that the relationship of... A child born of the marriage is the term they use. It's proven through the birth certificate and the marriage certificate. That's what it says. And then there's an outline of... We've got both of those. We have both of those, but the birth certificate doesn't list a father. Well, there's no place on the certificate to list the father. It doesn't have a blank father. It doesn't have a blank. We can see that it doesn't have a blank. Well, all the children born in that part of Mexico, they don't have a father listed, so therefore they're all illegitimate in your view. Your Honor, it's outside the record, but I've seen other birth certificates from that state, and they usually do have the father and mother listed. I'm not sure why this birth certificate doesn't. I don't know if that's what happens for illegitimate children. We're not really sure. Your client has the burden of proof in this under the Act. He's got the burden of proof. And the surname, Hernandez, appeared on his birth certificate. It does show up on the birth certificate. Her name was Rosales de Hernandez on the birth certificate, and his name is Hernandez on the birth certificate. There's no space to show father information. Now, we're left to speculate. In speculation, your client loses because he's got the burden of proof. Well, as far as burden of proof would go is our – we also – our argument would be the burden of proof in removal proceedings is on the government to prove by clear and convincing evidence that a person is an alien and removable. Well, he was born in Mexico, so that shifts the burden of your client to establish that he's an American citizen. It creates a presumption that he's an alien. And this certificate does not seem to rebut that presumption. So what we've – what we believe that we've produced with this evidence is we've produced a birth certificate that indicates he's illegitimate, and we indicated – we produced the marriage certificate. I don't see why you say the birth certificate by itself indicates that he's illegitimate. I don't see – there's no clear Mexican law that says this birth certificate says he's illegitimate. If – the other thing that we would have liked to have presented – No, not liked to. What's in the record? Okay. What's in the record is we presented an affidavit from the mother saying that the child – that she was not married at the time of birth. She didn't say not married. She said I was single. The father was not present. Okay. And a testimony from other people who affidavits who said that they – They just said they weren't aware. That's not kind of positive evidence she was not married. Correct. But what we would argue is if you're going to apply the presumption in Mexico from Mexican law that he should have been able to use the – that says a child is legitimate, Section 340 says that any evidence of the contrary to – that a child is legitimate would be presented to prove otherwise. Where's the piece of Mexican law that says this birth certificate establishes that notwithstanding she and her – she was married a year before to the child's admittedly biological father, that she was not – that this child was illegitimate. That the birth certificate establishes that. The only thing that we read – we read Article 324 that says a child in the marriage is proven by the birth certificates and the marriage certificates. It doesn't say or. And then we read 340 and 341 that talks about a child is presumed and then it gets evidence of the contrary. And then it specifically says – it specifically says if the birth certificate – if certificates are – 341, if certificates are defective, incomplete, or false, paternity can only be proven through a court proceeding to prove filiation, which is Article 341. In our case, we're arguing that there was no court proceeding to prove filiation. So we can't – we can't use the birth certificates against him if they wouldn't be used against him in Mexico. If there – or the judge has to allow him to prove filiation or lack of filiation through the record. In this case, the judge said that it didn't matter. The only thing that mattered was that the mother was married. Because she focused on – not on legitimation, but on the fact that the mother was married. Article 340 says the relationship of children born to a marriage is proved with a birth certificate and with a marriage certificate of the parents. Bingo. We have both of them. We have a birth certificate, but it's not – it's – again, focus on the word and as opposed to or. A birth certificate proves that a child was born and it proves that the mother – it proves the mother, but it doesn't prove the father in this case. I'd like to point the Court to some pre-court decision in De Silva v. Ballantyne, which in that case they were interpreting child under the Copyright Act, and they determined it to determine legitimate child. In this case, what we say is he wasn't legitimate in Mexico. The other thing that we point to is the language from Ira Cheddar. He said that this person was his biological father and that he and his mother lived with his biological father for 10 to 15 years at some point. Is that correct? He – the question was – the question was along the lines of did you – was your father in your life? And he said yes, and then he said 10 to 15 years, and we – there was never – it was never a question that was further explained as to what that meant. I thought there was testimony that he lived – he and his mother lived in Texas with his biological father. I don't believe it was – it was the question that was asked by the government counsel, and I don't believe it was actually clear as to what the answer was at the time and as to what the 10 to 15 years actually addressed. As to, you know, what – it was sort of a double question of was your father in your life and is your mom living with your father? And it was – it was actually asked in terms of the marriage relationship is what they were trying to establish at that point, not – Well, I guess my – the next question is the – the administrative law judge seemed to think that your client had the burden to establish that his biological father did not subsequently legitimize him, even assuming you accepted your argument that the birth certificate throws this into doubt. And where's the evidence that his father did not legitimize him? We – there really is no evidence of that because we – or the petitioner had a hard time proving a negative, so to speak, to prove that it did not happen. Well, his mother and his father both lived in Texas at the time, right? Yes. He could have called them as witnesses. He could have gotten affidavits from them. He did not do either of those things. He – he had an affidavit from his mother that addressed a different – different aspect. He was detained at the time, relying on pro bono counsel, so he was very limited, so to speak, as to what he could present. It's just the reality of – and the speed of which an immigration detention hearing is happening. And in this case, the government repetitively kept – kept moving the goalposts, so to speak, on the – on the petitioner. In the beginning, it was your mom's not a citizen. Then he proved that his mom was a citizen. They said his – he said his mom was born in the United States. They contended his mom was born in Mexico. Then he went through a process of proving that his mother was a citizen. Even – it would have derived citizenship through her grandfather – his grandfather, her father, because her grandfather was a U.S. citizen and that she lived her childhood years here. They – every – every hearing was a different – was basically a moving of the goalpost on him. And eventually – I mean, eventually the government – the judge, you know, had – had run out of time, so to speak. The – he was – kept having to prove a different thing every hearing, prove this, prove that. And eventually, you know, he didn't have a chance to do so. So that fact to us is, yes, it's not established, but we don't – we believe that it would be improper to transfer it to district court to go over that fact. What's your best evidence that there's a fact issue? Our best evidence that they have a fact issue would be – would be that the – as came up here, we're questioning whether he was legitimate or illegitimate in the law – under the law. The judge never made a determination of that fact. He made it an assumption. Was that a legal question or a factual question? I would say it's a fact question of whether – What's the fact issue? The fact issue is, was there a legitimation that occurred? What do you mean, was there a legitimation that occurred? That occurred for the child. By whom? By the father. Okay. And whose burden is it to establish a legitimation? Our – our contention is that it's actually by proving he was illegitimate at the time of birth, through the birth certificate and the marriage, that he is – What's your question on that? That he is – that he has proven that. And then the issue of whether it happened later is the government trying to overcome our presumption – I mean our – what we have proven. So if we disagree with you and say that you've not established as a matter of law that he was illegitimate, then what's the fact question? If we say that – if you say we have not – he's not established that he's – at that point, I don't believe there would be a fact question. Mr. Schaffer, your time has expired. Thank you, Your Honor. Ms. Phillips. May it please the Court, Rebecca Hoffberg Phillips on behalf of the United States Attorney General. I'd like to just present the plain and simple facts to start off with because this is what really matters here, and these facts are not in dispute. Edna Rosales Villanueva de Hernandez was married to Marcelina Hernandez Garcia in 1985. Petitioner was born about 13 months after that marriage. He has a birth certificate that says who his mother is, Edna Villanueva de Hernandez, and his name is Ulysses Hernandez Rosales. The birth certificate does not have any place on it for a father's name, so it wasn't that it was omitted and it wasn't that it was potentially unknown. In fact, the evidence shows that the father was known. What's in the record about why – what's the effect of a birth certificate like this one under Mexican law? That's what Petitioner has not demonstrated that he says he demonstrated. So what he wants to do is take the birth certificate in isolation and say that because, according to the birth certificate, we don't know who the father is, that, therefore, my client is illegitimate. It seems to me that foreign law is a fact question in these circumstances. Yes. Has he raised a fact question about what Mexican law is? He – what he has raised only shows that there is no dispute of facts. He actually quoted Article 324 as being Article 340 or 41 before. He said Article 324 and then told you the contents of 340 and 41. 324 says there is a presumption under Mexican law that after 180 days of marriage, a child born more than 180 days after that marriage is considered a child born of a marriage. And this presumption is very much like what we have in a lot of the states here, and it's a lot like what the Foreign Affairs Manual says that the State Department follows in terms of this presumption. So there are two presumptions here. Number one, the presumption is he's an alien. He doesn't dispute he was born in Mexico. And number two, the presumption is under Mexican law that he was a child born of the marriage. Now, he has tried to create – What does the Mexican law, if anything, say about this birth certificate that lacks a space for a father? He has not shown that it says anything about that. Now, I don't know if there is something out there – I'm just saying, has he raised a fact question on what is Mexican law as the effect of this birth certificate? He hasn't raised it in any meaningful way because all that Mexican law would do would say that he is a child born of the marriage from what he has presented because the burden is on him to show that Mexican law – How does he rebut that presumption under Mexican law is what I'm understanding that you're asking. I don't know based on what he has argued. He claims as a matter of law that under 340 and 341, that's how you rebut the presumption. And that's what I tried to flesh out in my brief, that that's not at all what those articles say. And he has not actually explained – he's not recognizing the presumption against him, it seems, even though he has stated it. And I – even with this exchange with this court, I'm not sure that he understands where the burden of proof lies here. If this were a matter before the district court, I believe the government would have summary judgment at this point because you're not showing where the genuine issue of fact is here and when it's his burden to overcome this presumption. So it wasn't on the government to produce a ton of evidence in this regard. What do we do with Rosales' affidavit that she was single at the time of the child's birth? Your Honor, I – that affidavit could have said a lot of things that would have raised a genuine issue for him. And what it said – Single, single – she did say single. She did say single. She did say single. She did. She didn't say not married. And she didn't say divorced. And she didn't say anything that would actually reflect a marital status. So this court should require something more. The government's position is that that's the most she could say because she was married to him and there was no evidence of a divorce prior to Petitioner's birth. And so to say you were single, I mean, if you're separated, if you're living on your own, if the father's not present, then being single you could technically say that in a way. But, you know, the fact that she didn't say not married, it's what she didn't say and what she could have said to make it crystal clear what was going on here, to raise a genuine issue. Once it became clear what was at issue, he could have provided another affidavit from his mother. He could have provided an affidavit from himself. These affidavits could have raised genuine issues of fact. That's what we're looking for here is a genuine issue of fact, not trying to create Mexican law and try to rely on a birth certificate alone to create an issue of fact. What's the evidence about her attempts to seek a divorce in Mexico? What is the evidence about her attempts to seek a divorce in Mexico? All we know is in the record. Petitioner's counsel said at one point that she was trying to seek a divorce and she was having trouble obtaining her marriage certificate. That's not evidence. Counsel's statement is not evidence, is it? Right. No. I'm saying that's all that's in the record. We don't have—all we know is that she remarried someone else, and she could have lied and said she was never married. My guess is that she got a divorce at some point before her subsequent marriage because she would have had to have been divorced to marry someone else, or at least the eyes of the Texas law would have wanted to believe that she was eligible to be married. And so we know that by, you know, around 2000, the year 2000, that she was divorced by that point because she got remarried. But we don't know anything—that's the concrete evidence that we would say that she was divorced sometime 15 years later that she was able to remarry. We don't have other evidence. But, again, that would have been for Petitioner to bring forth to show that there's a genuine issue of fact because he needs to overcome a presumption here. And what's the evidence about the wife and the husband and the child living together? Oh, yes. I wanted—that was another that I wanted to point out. So I would like to—this is exactly what's in the record because my opposing counsel tried to say that it wasn't—that it was something other than what it was. So you testified, sir, that your father was Marcelino, correct? Hernandez, he responds, because he was saying, my father, I never recalled him being Garcia. He was always Hernandez to me, this is the petitioner saying. So the judge says, well, he could have gone by both those names. Okay. So did you ever live with him? Yes. How long? He raised me whenever they—they went their own ways over here for, I guess, about 10, 15 years. So you knew he was your biological father, correct? Yes. You just didn't know whether your parents got legally married or whether they just lived together, correct? Right. It was never something that would even bother me. I always knew them as my mom and dad. So this is the testimony regarding the identity and the relationship and how he lived with his father for those years. Now, you know, when you combine that information, his name reflects that too, Hernandez. Where does Hernandez come from? The fact that his birth certificate lists his name as Hernandez and his mother is listed as de Hernandez. And in the Spanish language, that signifies the marriage. That appears on the birth certificate. And the birth certificate is not in dispute. It's not in dispute at all. I think the reply brief tried to make it seem like maybe we, the government, has some sort of other version of it. We don't. This is not in dispute. The marriage certificate and the birth certificate, the two documents that you need, are not in dispute. The fact of the marriage, July 1985. The fact of his birth, August 1986. His birth, he was born with the name Hernandez, with his mother listed as being married to Hernandez, coupled with his testimony that he knows who his father is, and he lived with him for 10 to 15 years. He didn't say he lived with his mother and his father. He said he lived with his father for 10 years. He said he raised me. You're right. He said he raised me. We know, based on the mother's affidavit, that she raised him at some point too. That's not a material issue, you know, in terms of, you know, who raised him when. It seems as though he had a relationship with both, and they went their separate ways. Obviously, we know that they ultimately married other people. But the fact that they married other people and that other people don't know about their first marriage doesn't make it not so. And as he stated today, he's not disputing the fact of the marriage. He's not disputing that. He said so right before you. So there's a presumption in play here, and it's under Mexican law and it's under our law. Born out of wedlock means the same thing in Mexico as it does here. It's a very plain language term. If you're born out of wedlock, you're considered, quote, unquote, illegitimate. So he's trying to start with the illegitimate aspect. And by substituting the words, he's trying to make a legal argument. But if you're illegitimate, it's the result of being born out of wedlock. I understand you want to interchange them because in a way you can, but what they actually mean, that's not in dispute. Your biological parents were not born at the time, were not married at the time of your birth. That's pretty much what born out of wedlock, it can't mean anything else. He hasn't offered another definition. He actually hasn't. What he's just claiming is that he's, quote, unquote, illegitimate. He's not actually disputing what born out of wedlock means. And, in fact, there were some exchanges before the immigration judge where he basically agreed with the idea that, okay, and this is in the record on 178 and 214, and does the respondent agree that if the parents were indeed married at the time of his birth that the other standard, the 10-5, applies? Yes, Your Honor. And they asked that twice, then, you know, if it turns out there's proof that the parents were actually married, because at that point he wasn't actually disputing the identity of his father before his hearing. That sort of all of a sudden came up at the end when he said, aha, my birth certificate doesn't list a father. That means we can pretend like we don't know who my father is and say that I don't have one under the eyes of the law. And as Your Honor pointed out, every kid in Mexico, in that state of Mexico, could do that. They could simply... And what he's asking us to do is to declare that under Mexican law, a child born in these circumstances to a parents that were married, I mean, to a mother that was married 13 months before, with a birth certificate that shows De Hernandez is illegitimate as a matter of Mexican law. That will come as a real shock in Mexico. To me as well, Your Honor. And I have not seen anything under Mexican law that would support that. It's not our burden, but I have tried to do my due diligence in reviewing what I can of the Mexican law, and I'm simply not finding anything that makes the birth certificate of that nature alone somehow determinative of you're no longer born to a marriage. As I mentioned, particularly where the name, that's often evidence of the marriage and evidence of legitimacy. If you take your father's name and you have physical custody with the father, that's usually evidence of legitimacy, if it were even required, which it's not. I mean, the fundamental problem here is mixing up the legitimacy idea. Let's assume, let's say she said I'm single at the time he was born. Let's just say that means I was not married. Whose burden is it to prove that his father subsequently legitimized him? And what does legitimized mean? Do we look to Texas law since they moved to Texas? Do we look to Mexico? And whose burden of proof is that? There's no burden of proof of legitimacy here, Your Honor, because if the father did or didn't legitimize him, we just care whether his biological parents were married at the time of his birth. There's no burden of proof on legitimacy. I think that's what's really fundamentally confused here. We don't need to. But let's say he was illegitimate at the time of his birth. His father can still legitimize him at some point. He could, but he'd be born out of wedlock. If he were born to parents, if he were the product of an adulterous affair, if his parents divorced before he was born, those are the things that he would show. We wouldn't be going down a legitimacy route because legitimacy, as this court recognized in Iracheta, see, legitimacy was important in the filial rights when the biological relationship was being questioned. He's trying to derive citizenship from his mother where the biological relationship is not questioned at all. That's not at issue. So his ability to derive citizenship from her as her son is not at issue. She doesn't need to legitimize him. We know who his mother is. There's no legitimacy issue here. And that's what's so fundamentally confused because by substituting the words, he's an illegitimate child because he's born out of wedlock, it's confusing the terms a little bit. And I understand where it's coming from because it's a term of art to say you're illegitimate because you're born out of wedlock. But it's an if-then. So if you're born out of wedlock, you're illegitimate. And if you're illegitimate and you're trying to acquire citizenship from a father and you don't know the biological relationship to the father, the father has to legitimize the child in order to be able to acquire citizenship from the father. Now, we know who his mother is because she is on the birth certificate, right? And we've never questioned the relationship that way. So legitimization is not – it's just a term of art. And I like how this Court in Erichetta is moving toward acknowledgment as a term because I think that whether something is legitimate or illegitimate kind of confuses a lot of things. We're looking to see whether his biological parents were married at the time of his birth. That's all that 1409C requires. That's all. And he's pointing to 1409A that talks about legitimization, you know, in the context of deriving citizenship from a father. And that simply has no role in this provision. So I think that that's where you sort of go down a really different trail that way that isn't applicable here. You know, you have to just stick with the plain language of the statute. That's all we're doing. Nobody has offered another definition of born out of wedlock. I know he keeps purporting to say that there's some difference. Biological parents married at the time of birth. It's as simple as that. And every circuit court to ever address this provision has looked at it exactly that way. It's almost so straightforward that there isn't a decision bothering to go through some interpretation of it, if that's what you're looking for. I mean, the closest I can come to telling you is that the Board issued a decision, which actually Petitioner cited, in matter of Fernandez, 14 INN Decision 608, BIA 1974. And the Board is using the words legitimate and illegitimate. But what they're ultimately looking for is we must determine whether the relationship would be considered a marriage under Mexican law. That's what they're looking for in this is under a previous version of the INA, but it's the same idea where you're looking to Mexican law to see if it would be considered a marriage. Look at the legal relationship under Mexican law. So that's exactly what the Board did here and looked at the definition of marriage. Whether the parents were married is the question. That's what the Board's saying here. So I think it's more helpful to toss out the legitimate language and focus on born out of wedlock. It means what it says. It says what it means. And no court has ever bothered really to go into that so much, at least that I found, because it is that plain and simple. So any circuit court addressing this, you'll see that they just sort of go right into the inquiry. Were the biological parents married? And I cited a few cases in my brief about that. The Third Circuit had an unpublished decision, 226 FED APPX 242, May 22, 2007. The petitioner's mother in that case filed an affidavit alleging that her husband was not the father of her son. And there her husband was listed on the child's birth certificate. So there there was, you know, everyone thought that was the father. The mother intervened with an affidavit, said, that's not the father. Here's my affidavit. And then the court transferred the case for the DNA findings and for the paternity test, because that raised a genuine issue of material fact over the paternity. Here, you know, the closest he gets to raising a genuine issue is the mother's affidavit. That's the closest he gets here. It's really the only evidence in the record. That's right, Your Honor. That's the only evidence. So the question is whether his mother saying that she was single at the time of his birth, does that raise enough of a genuine issue, given everything else that we know to be true, does that raise enough that we need to go through all the proceedings just to find out that the father is who he says he is, the father is who the name reflects in the birth certificate and in his mother's married name, to go through that process based on the mother's simple sentence that says, I was single, and the father was not present. She knows who the father is. But by referring to the father was not present at the time of the birth, she knows who the father is. So it's not like we're wondering, we don't know who the father is. Maybe he doesn't really know who the father is. If the mother knew who the father was, there's no reason to think that he wouldn't know who his father was, particularly if he lived with someone for 10 to 15 years. It really stretches the mind to think that it could be any other way. So is there a genuine issue that's worth transferring to the district court? I mean, that's what this court really needs to decide here because, you know, he needs to raise enough of a material dispute to warrant going through an entire discovery process at the district court level. The government's position is that he has not done that with what he has presented, with a single sentence that I was single. And I know his brief made a lot more of that affidavit than what's actually in the affidavit, and that's why I felt I needed to make it very clear what was actually in the affidavit, because it doesn't say anything more than, you know, I was single, the father was not present. I can be contacted with further questions. However, the mother was never brought in for testimony, or she never testified. We'll put it that way. She never brought in another affidavit, and there's been no other affidavit from the father or from anyone else or even from the petitioner himself saying anything disputing the marriage or the paternity. Those are the two ways he can raise a material issue of fact. Question the marriage, which he told you today he's not questioning the marriage. He agrees that they were married about 13 months prior to his birth. What he's tried to do is create this legal fiction that we can pretend we don't know who the father is based on the birth certificate not providing a space for the father. And that simply is not based on anything in Mexican law, and it would create the absurd result of allowing every child in that state of Mexico to acquire a born-out-of-wedlock illegitimate status simply because there's no space to put a father's name. I see that my time is out, and unless the Court has any further questions, the government will rest on its brief. Thank you. Mr. Schaffer. Your Honors, I'd like to start to bring back to the quote from the record. The quote from the petitioner was, He raised me whenever they, comma, they went their own ways over here for, I guess, about 10 to 15 years. The 10 to 15 years, we don't know if that's meaning raised. We don't know if that's when his parents went their own ways. We don't know what that means. And again, this was asked by the government, and it went straight into the biological relationship. So I don't know if we know anything from that quote of what the 10 to 15 years means. Back to the biological relationship. Miller v. Albright, Supreme Court case, has a quote talking about paternity. And the quote is, Despite recent scientific advances, it remains preferable to Congress to require some formal legal act to establish paternity. Our focus is it's the legal act. In this case, it would have been a birth certificate, it would have been a court, something, legal act would have established paternity. We can't assume paternity. We can't presume paternity. We have to look at legally whether he had a parent. Legally, again, we would argue he doesn't have a parent in Mexico, so his parents couldn't be married. The other thing that I think is key in this case is she gave the example of a child in an adulterous affair, an adulterine child. That child, would it be of the marriage, would it be not of the marriage? Our contention is under the law in Mexico, a child of an adulterous relationship would be illegitimate, so therefore it would not be of the marriage. That's not the facts in this case, but that's an example of when a child would have a, when a mother could be married and the child would not be of the marriage. The other thing, the last thing is Iracheta v. Holder, which we believe is highly applicable. There's a quote from that case that says, the question is, the petitioner placed him in the same legal position as a child born in wedlock regardless of the applicable legal label. Again, our argument is because there's no child, no name on the birth certificate, he is in the same identical position of whether he, of whether, of a child who's illegitimate. So he has no paternity to establish. Back to the question from earlier, a factual. What about the fact that the birth certificate lists his name as De Hernandez? I mean, that may not be perfect, but it's maybe close enough for government work. It may be, but we're talking about possibly removing a U.S. citizen. So I would say that assuming that this man was his father because of the name Hernandez, which is a relatively common name in Mexico, is a big assumption. Back to the possible factual issue is, you know, the government just talked about, oh, there's no space for a birth certificate. And there's no space for a name of a father in that state in Mexico. Well, that's a factual issue that wasn't established before. We don't know. We do have the burden of proof, but we don't know. I think it's unfair to say that this is going to open up the floodgates because in Mexico there's no space. So Mexican law is a fact question, and you've got the burden of proof to show that this birth certificate under Mexico law says he's illegitimate. That's your burden, not the government's. The – I apologize for misunderstanding your question, but you're saying the – Whether what Mexican law provides in this context is a fact question, you have the burden of proof to raise a fact question. We have his birth certificate, and you've got to say under Mexican law there's a fact question about what this birth certificate means, that it shows he's – whether it shows he's illegitimate or born of a marriage or not. Where is the evidence you have put on to show that this certificate on its face shows that he's illegitimate? Just the birth certificate itself that has no father. But you have not – but no other – you've not offered any Mexican law that backs up your interpretation of that. We – the only thing we have is, again, 340 and 341 that talks about the process of rejuvenation, and our contention is that is – But that's all you've offered. You've not offered anything else. That's correct, Your Honor. Unless that raises the fact question, then you've got to raise some other fact question. Yes, Your Honor. Again, I would say the fact question is whether birth certificates in general in Mexico all – in that state of Mexico all have a blank for the father, or was that only for the illegitimate child? That's the question. And what evidence have you shown that that's – that raises that question? I mean, have you shown – have you put any of the other birth certificates that say, see, this is different? In the record, there's a birth certificate from the mother and her birth certificate that the government relied on to show the mother was born in Mexico. And I'm sorry I don't have the site for that, but there are two instances that show up on the record. And it is a birth certificate of Nuevo Leon. It has a mother. It has a father. It has grandparents. And it says certificate of birth. This also says certificate of birth. I apologize for not having the site. Thank you, Mr. Schaffer. Thank you, Your Honor.